UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANTHONY B. ALLEN, | ) | Case No. 2:12-cv-00226 JAM-KJN |
| Plaintiffs, | ) | **PRETRIAL CONFERENCE ORDER** |
| v. | ) | |
| RALEY'S, a California Corporation; JOYCE RALEY TEEL, an Individual; MICHAEL J. TEEL, an Individual; and DOES ONE through 100, inclusive, | ) | |
| Defendants. | ) | |

Pursuant to court order, a Pretrial Conference was held on January 10, 2014 before Judge John Mendez.  Larry L. Baumbach and Jeffrey N. Daly appeared as counsel for plaintiff; Daniel J. Coyle and Shaye Schrick appeared as counsel for defendant.  After hearing, the court makes the following findings and orders:

## I.   JURISDICTION/VENUE

Jurisdiction is predicated upon 28 U.S.C. § 1331, and has previously been found to be proper by order of this court, as has venue.  Those orders are confirmed.

///

## II. JURY/NON-JURY

Plaintiff has requested a jury trial.

## III. STATEMENT TO BE READ TO JURY

Ten (10) days prior to trial the parties shall E-file a joint statement of the case that may be read to the jury at the beginning of jury selection.

## IV. UNDISPUTED FACTS

(1)  Plaintiff is African American and 62 years of age.

(2)  Raley's employed Plaintiff from April 22, 1984, when he was hired, to February 16, 2012, when he retired.

(3)  When Plaintiff first started working for Raley's, he was a Utility Clerk.

(4)  By December 6, 1984, after less than a year of employment with Raley's, Plaintiff was working as a Grocery Clerk in Store No. 438 on Mack Road in Sacramento.

(5)  On March 16, 1996, Plaintiff transferred to Store No. 405 on Freeport Boulevard in Sacramento.  He continued to work as a Grocery Clerk.

(6)  On August 10, 1998, Plaintiff returned to Store No. 438, but did so as a Senior Clerk.

(7)  Plaintiff continued to be employed as a Senior Clerk at Store No. 438 from 1998 until his retirement in 2012.

(8)  As a Senior Clerk, Plaintiff performed duties such as, but not limited to, checking groceries and stocking shelves.

(9)  During his employment, Plaintiff also worked at Store Nos. 221 and 305.

(10) Throughout his employment with Raley's, Plaintiff held a union position covered by a Collective Bargaining Agreement.

1    (11) Plaintiff filed a discrimination and failure to prevent

2    discrimination lawsuit against Raley's in 2008, in Yolo County

3    Superior Court.  Plaintiff testified during that trial regarding

4    incidents he alleged occurred during his employment with Raley's.

5    After a jury trial on the merits, the court entered judgment in

6    favor of Raley's and against Plaintiff on July 29, 2010.

7    (12) On or about July 15, 2011, Plaintiff began a workers'

8    compensation leave of absence.

9    (13) On October 23, 2011, Plaintiff returned from his workers'

10   compensation leave of absence, at which time he reported to Store

11   Director Rod Hull and acting Assistant Store Director Kristine

12   Griffith.

13   (14) Plaintiff continued to work for approximately three weeks

14   through November 14, 2011, at which time he began another leave of

15   absence.

16   (15) Plaintiff filed a first Charge of Discrimination with the

17   Department of Fair Employment and Housing ("DFEH") on December 17,

18   2010, and a second Charge of Discrimination on October 20, 2011.

19   He received right-to-sue letters on January 5, 2011 and October 20,

20   2011.  Plaintiff filed a Charge of Discrimination with the Equal

21   Employment Opportunity Commission ("EEOC") on October 24, 2011.

22   The EEOC issued its right-to-sue letter on December 1, 2011.

23   (16) At all relevant times, Raley's maintained a policy

24   against unlawful harassment.

25                    V.   DISPUTED FACTUAL ISSUES

26   Plaintiff's Asserted Disputed Facts:

27   1.   A few months after the Yolo County Superior Court trial

28   concluded, Plaintiff complained to Assistant Store Director Jim

Reedy ("Reedy") that another employee, Meat Department Manager Jim Winkelman ("Winkelman"), made a racial comment regarding a customer in Plaintiff's presence.

2.    Although Plaintiff requested that Reedy not take the complaint any further, Reedy notified Store Director John DeArman ("DeArman"), who then contacted Human Resource Manager Patricia Leist ("Leist").

3.    Leist instructed DeArman to interview Winkelman and all witnesses Plaintiff identified as being present during the alleged incident to find out what happened.

4.    After talking to the witnesses Plaintiff identified, DeArman, Reedy and Leist concluded that Plaintiff's allegations could not be substantiated.

5.    On January 26, 2011, Plaintiff's attorney sent a letter to Raley's counsel complaining that Plaintiff had been subjected to racial discrimination and harassment following the Yolo County trial.

6.    In response to the letter from Plaintiff's counsel, Raley's hired an outside investigator to investigate Plaintiff's new allegations.

7.    On February 4, 2011 and February 11, 2011, the investigator interviewed Plaintiff, in the presence of his attorney, for a total of eight hours and obtained a signed statement from Plaintiff summarizing his allegations.

8.    The investigator also interviewed 11 other employees who worked at Store No. 438, and obtained signed statements from each of them.

9.    At the conclusion of the investigation, on May 9, 2011,

the investigator communicated to Raley's that none of Plaintiff's allegations could be substantiated.

10.   When Plaintiff retired in February 2012, he received full retirement benefits.

11.   Aside from his allegation regarding Winkelman, Plaintiff admits he did not hear any race-based comments while working at Store No. 438 following the 2010 Yolo County Superior Court trial.

12.   Raley's hired plaintiff as a night crew member at the Freeport Boulevard store in Sacramento on or about April, 1984.

13.   Plaintiff reported to the Head Clerk, who is responsible for supervising the night crew.

14.   Plaintiff understood that no other contract governed his employment.

15.   For 27 years, Plaintiff was a good, loyal and dedicated employee of Defendant, Raley's.

16.   Defendant Raley's had a policy against racial harassment which constituted abuse of the dignity of any person because of race.  Such harassment may consist of:  (1) verbal innuendo, suggestive comments, insults, threats, jokes; (2) non-verbal such as suggestive or insulting sounds, leeting; (3) physical harassment … including … brushing the body.

17.   Raley's harassment policies extended to outside vendors and customers.

18.   Raley's policy required that once the organization is on notice of a possible harassment situation, it has an obligation to act.  This is true even if an employee asks to withdraw a complaint.

19.   Raley's defined the following acts as "behavior that

could be interpreted as retaliation": (1) changes in workload; (2) threats; (3) reduced hours.

20. Plaintiff has no knowledge that any person who engaged in racial harassment was disciplined.

21. Plaintiff reported to Supervisor, Jim Reedy, that Plaintiff overheard employee, Jim Winkelman, use the words "stupid dumb nigger" in describing a customer.

22. Jim Reedy did not immediately "act" on Plaintiff's report.

23. An investigator found "Jim Winkelman made racially and sexually inappropriate comments that were not made in Anthony Allen's presence."

24. Winkelman admitted using the word "nigger" but not at work.

25. Plaintiff's report about Winkelman using the words "dumb ass nigger" was disbelieved by Raley's.

26. Plaintiff's supervisor, Adam Smith, danced and sang rhythm and blues songs to Plaintiff, stared at Plaintiff and delayed Plaintiff's breaks from check stand duty sometimes for hours.

27. Employee, Mike Bates, regularly and repeatedly used the word "nigger".

28. Manager, Mike Cummings, in referring to Plaintiff, stated, "I don't want that lazy ass nigger in produce."

29. Head clerk, Mike Searle, referred jokingly to Plaintiff's wife as "that bitch."

30. Jim Winkelman told a white employee who wanted to date a white, female employee who was dating an African-American at the

1 | time, "your dick isn't black enough."

2 |   31. A female vendor told Plaintiff when he refused to cash
3 | her check "you're black, you don't know" and "the white stores do
4 | it."

5 |   32. Rather than discipline Jim Winkelman for his use of
6 | inappropriate language, Store Director, John DeArman, told
7 | Winkelman that if he (Winkelman) ever needed to "vent" he could
8 | come to DeArman's office, shut the door, and vent.

9 |   33. Director, John DeArman, stated that Jim Reedy said Adam
10 | Smith had grown up in a predominantly white environment and might
11 | need counseling on how to treat a racially diverse group.

12 |   34. Director, John DeArman, stated he knew nothing about Adam
13 | Smith's background.

14 |   35. After the state trial, Mike Barnes refused to work with
15 | Tao Her who was Asian and was transferred to another store because
16 | he had overreacted and needed a fresh start.

17 |   36. Eddie Mejorado, visual merchandise manager at the Mack
18 | Road store and third in line after store director and assistant
19 | director, described Plaintiff's complaints as "I had no idea what
20 | Tony was talking about" and accused Plaintiff of "falsely claimed"
21 | Mejorado overheard Winkelman make the "lazy ass nigger" statement.

22 |   37. Following the state trial and prior to Plaintiff's
23 | retirement, Plaintiff's hours were reduced from 40 per week to 32
24 | per week.

25 |   38. Plaintiff's supervisor, Adam Smith, testified in
26 | deposition, that he was unaware Plaintiff's hours were cut and was
27 | not aware there was an across-the-board reduction in hours.

28 |   39. Plaintiff was threatened with discipline if he continued

to complain about treatment on the job.

40.   Plaintiff was called "nigger" frequently as early as 1985.

41.   Plaintiff was told "just try to get along with them."

42.   In 1997, Larry Monthly told another employee he did not want Plaintiff in his produce department because "niggers are lazy."

43.   The job in produce was given to a white man.

44.   Plaintiff's co-worker, Tao Her, in 2009, told Plaintiff that co-workers, Mike Bates and Mike Cummings (produce manager), continually referred to Plaintiff as "nigger".

45.   Mike Cummings, produce manager, also told Her, "I don't want that lazy ass nigger in produce" referring to Plaintiff.

46.   After Plaintiff's state trial, Mike Bates, a co-worker, smirked and laughed at Plaintiff but when Plaintiff reported the conduct he was told not to bother because "it wouldn't change anything".

47.   In early 2011, Plaintiff's supervisor, Adam Smith, deliberately brushed Plaintiff's person.

48.   Plaintiff's supervisor, Adam Smith, was disciplined for physically pushing another employee but not for contact with Plaintiff.

49.   Mike Bates admitted in sworn testimony he used the term "Alabama porch monkey" and that he called Brazil nuts "nigger toes".

50.   Although a senior clerk, Plaintiff was assigned to the busiest check-stand, #4.

51.   While working at check-stand #4, Supervisor Smith

neglected to give Plaintiff scheduled breaks despite Plaintiff being diabetic and over 50 years old.

Defendant's Asserted Disputed Facts:

1.  Whether Raley's employees used any racially-derogatory terms at Raley's stores.

2.  Whether Raley's employees used any racially-derogatory terms in Plaintiff's presence.

3.  Whether the reduction of Plaintiff's hours during a three-week period in 2011 was based on his race or was the result of business needs.

4.  Whether Raley's or its employees treated Plaintiff differently because of his race.

5.  Whether any of the people Plaintiff contends harassed him were his supervisor.

6.  Whether Raley's had knowledge of the harassment Plaintiff alleges and failed to take appropriate action based on that knowledge.

7.  Whether Plaintiff's allegations of "harassment" were based on race.

8.  Whether Plaintiff's allegations of "harassment" were severe or pervasive.

9.  Whether Plaintiff unreasonably failed to take advantage of Raley's policies prohibiting harassment and/or Raley's procedures for resolving any such complaints.

10.  Whether Plaintiff was damaged.

///

///

///

9

VI. <u>DISPUTED EVIDENTIARY ISSUES</u>

<u>Plaintiff's Disputed Evidentiary Facts</u>:

1.   Admissibility of verdict in state court proceeding beyond issues decided by the verdict itself.

2.   Use of undisclosed video portions of Plaintiff's deposition at trial.

3.   Use of evidence of prior jury findings that Defendant Raley's was guilty of racial discrimination and was assessed punitive damages for willful discrimination.

<u>Defendant's Disputed Evidentiary Facts</u>:

Raley's will file motions *in limine* before trial, and reserves the right to make objections as evidence, argument and/or comment is proffered during the course of trial.  Raley's anticipates filing the following motions *in limine* addressing disputed evidentiary issues.  Other motions may be determined to be necessary as Raley's completes its trial preparation.

1.   Exclusion of testimony, exhibits and other evidence related to Plaintiff's contention that he was denied a promotion or transfer between departments or stores based on his race, as previously adjudicated against him in the Yolo County Superior Court trial.

2.   Exclusion of testimony, exhibits and other evidence related to Plaintiff's contention that Raley's employees (specifically "John" and "Ferrin") made racially-derogatory statements regarding African Americans while Plaintiff was working on the night crew at Store No. 438 in the 1980s or early 1990s.

3.   Exclusion of testimony, exhibits and other evidence related to Willie Mae Young, who last worked with Plaintiff in the

mid-1990s when Plaintiff worked at Store No. 405.

4.   Exclusion of testimony, exhibits and other evidence related to Plaintiff's contention that coworker Tao Her overhead Produce Manager Mike Cummings and Receiving Head Clerk Mike Bates make racially-derogatory statements regarding African Americans, outside of Plaintiff's presence, before Mike Cummings' August 1, 2009 retirement.

5.   Exclusion of testimony, exhibits and other evidence related to statements Plaintiff claims Larry "Monthly" or "Muffly" made regarding Plaintiff working in the Produce Department at store 438.

6.   Exclusion of testimony, exhibits and other evidence related to Plaintiff's contention that Mark Searle called Plaintiff's wife a "bitch."

7.   Exclusion of testimony, exhibits and other evidence related to Plaintiff's assignment to any particular check stand, Check Stand No. 4 or otherwise.

8.   Exclusion of testimony, exhibits and other evidence related to discipline of Adam Smith for physical contact with an unrelated employee.

9.   Exclusion of testimony, exhibits and other evidence related to Mike Bates' transfer from stores 438 to 405 after conclusion of Yolo County Superior Court trial.

10.   Exclusion of testimony, exhibits and other evidence related to Plaintiff's contention that Jim Winkelman said to a third party, out of Plaintiff's presence, that another employee's "dick is not black enough" to date one of his coworkers.

11.   Exclusion of testimony, exhibits and other evidence

related to Plaintiff's contention that a vendor told him, at some undetermined time, "you're Black," and the "'White stores do it."

12.   Exclusion of the declaration of Tao Her.

13.   Exclusion of testimony, exhibits and other evidence related to Plaintiff's contention that non-African American employees were treated more favorably than Plaintiff unless he can establish a foundation of personal knowledge regarding those allegations.

14.   Exclusion of Plaintiff's Complaint and documents related to his Charges of Discrimination filed with the DFEH and EEOC, each of which include allegations related to dismissed claims.

15.   Exclusion of witnesses not identified on Plaintiff's initial disclosures or any supplemental disclosures.

16.   Exclusion of deposition testimony of witnesses who Plaintiff fails to establish are "unavailable" for trial, e.g., that the witness is dead; that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition; that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment; that the party offering the deposition could not procure the witness's attendance by subpoena; or on motion and notice, that exceptional circumstances make it desirable — in the interest of justice and with due regard to the importance of live testimony in open court — to permit the deposition to be used.

17.   Exclusion of testimony, exhibits and other evidence related to *John O'Quinn v. Raley's and Bel Air, et al.*, United States District Court for the Eastern District of California, Case

No. 2:02-cv-00308-MCE-KJM.

VII. <u>RELIEF SOUGHT</u>

Plaintiff seeks recovery of general damages, lost wages (past and future) with interest, attorneys' fees and costs.  Raley's seeks attorneys' fees and costs of suit.

VIII. <u>POINTS OF LAW</u>

Trial briefs shall be E-filed with the court no later than ten (10) days prior to the date of trial, i.e., February 14, 2014. Any points of law not previously argued to the Court should be briefed in the trial briefs.

IX. <u>ABANDONED ISSUES</u>

1.   <u>Plaintiff</u>

The Court granted Raley's motion for summary judgment/partial motion for summary judgment as to Plaintiff's First and Third Claims for Relief for: (1) age and race discrimination; and (2) failure to take all reasonable steps to prevent discrimination and harassment.  In addition, the Court granted Raley's motion as to the punitive damages claim.

2.   <u>Raley's</u>

Raley's withdraws the following affirmative defenses: 20th Affirmative Defense (after-acquired evidence); 22nd Affirmative Defense (punitive damages); 23rd Affirmative Defense (punitive damages); 24th Affirmative Defense (good faith); 25th Affirmative Defense (exhaustion); and 26th Affirmative Defense (at-will employment).

///

///

///

## X.   WITNESSES

Plaintiff anticipates calling the following witnesses:

1.   John DeArman

2.   Tao Her

3.   Jim Moore

4.   Muhammad Ali Meatachem, PsyD.

5.   Willie Mae Young

6.   Mike Cummings

7.   Joey Tobias

8.   Philip Storey

9.   Henry Gailin

10.  Sonny Yee

11.  Jim Winkleman

12.  Randy Bushey

13.  Cary Cook

14.  Gabriel Gonzalez

15.  Sharona Voyles

Defendant anticipates calling the following witnesses:

1.   Anthony Allen

2.   Jerry Landers

3.   Brenda Phillips

4.   Patricia Leist

5.   Joey Tobias

6.   Vida Thomas

7.   Rod Hull

8.   John DeArman

9.   Rachelle Manalo

10.  Jim Moore

11.   Jim Reedy

12.   Kristine Griffith

13.   Leah Gayle

14.   Adam Smith

15.   Anthony Lopez

16.   Jim Winkelman

17.   Eddie Mejorado

18.   Ronika Rattan

19.   Henry Galan

20.   Mike Cummings

21.   Mike Bates

22.   Sue Cristoni

23.   Jon Oide, M.D.

Each party may call a witness designated by the other.

A.   No other witnesses will be permitted to testify unless:

(1)   The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Conference, or

(2)   The witness was discovered after the Pretrial Conference and the proffering party makes the showing required in paragraph "B" below.

B.   Upon the post-Pretrial discovery of witnesses, the attorney shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so that the court may consider at trial whether the witnesses shall be permitted to testify.   The evidence will not be permitted unless:

(1)   The witnesses could not reasonably have been discovered prior to Pretrial;

1        (2)   The court and opposing counsel were promptly

2 notified upon discovery of the witnesses;

3        (3)   If time permitted, counsel proffered the witnesses

4 for deposition;

5        (4)   If time did not permit, a reasonable summary of the

6 witnesses' testimony was provided opposing counsel.

7        XI. <u>EXHIBITS, SCHEDULES AND SUMMARIES</u>

8    Plaintiff intends to introduce the following exhibits:

9    1.   Raley's Workplace Harassment II (3 pages).

10    2.   Jim Reedy's 9/21/2010 written memoranda of Jim Winkleman

11 incident calling a customer a stupid dumb nigger (6 pages).

12    3.   May 16, 2011, Vida Thomas investigative report (59

13 pages).

14    4.   Raley's Harassment Policy (2 pages).

15    5.   Resource Guide – Workplace Harassment (45 pages).

16    6.   Complaint of Discrimination under FEHA (3 pages).

17    7.   Right-to-Sue Notice from FEHA (1 page) dated October 20,

18 2011.

19    8.   Notice of filing of discrimination complaint with EEOC,

20 dated October 10, 2011.

21    9.   Right-to-Sue Notice from EEOC, dated November 25, 2011.

22    10.  Statement of Tao Her.

23    11.  Statement of John DeArman, dated November 10, 2009.

24    12.  Raley's Ethnicity Summary dated March 19, 2010 (2 pages).

25    13.  Union Agreement (61 pages).

26    14.  Special Verdict (2 pages).

27    15.  State Court Judgment.

28    16.  Complaint in U.S. District Court (9 pages).

Defendant intends to introduce the following exhibits:

1.    2/26/84 Employment Application of Anthony Allen.

2.    3/17/96 Blue Form Showing Transfer from Store No. 438 to Store No. 405.

3.    8/11/98 Blue Form Showing Transfer from Store No. 405 to Store No. 438.

4.    2005 Raley's Employee Handbook.

5.    7/11/97 Acknowledgement (by Anthony Allen) of Receipt of Raley's Employee Handbook.

6.    2/16/12 Termination Check List.

7.    10/7/07-10/8-11 UFCW Golden State Local 8 Collective Bargaining Agreement.

8.    Job Description for Grocery Checker/Food Clerk.

9.    Position Overview for Grocery Day Clerk.

10.    Produce Department Schedule for March 2008.

11.    Timecard Reports and Raw Time Punches for Anthony Allen for March 2004 through February 2012.

12.    Store No. 438 Schedules for August 2011 through December 2011.

13.    Raley's Anti-Harassment Training Materials.

14.    Undated Statement of Jim Reedy.

15.    11/10/09 Statement of John DeArman.

16.    3/10-4/10 Notes of Investigation by Joey Tobias.

17.    Undated Statement of Tao Her.

18.    10/1/10 Statement of John DeArman.

19.    10/1/10 Statement of Ronika Rattan.

20.    11/9/10 Letter from Anthony Allen to DFEH.

21.   5/16/2011 Investigative report of Vida Thomas (including individual statements).

22.   6/19/09 Warning Notice of Tao Her.

23.   11/16/09 Warning Notice of Tao Her.

24.   2009 Authorization and Medical Records of Anthony Allen.

25.   4/23/03 Medical Records of Anthony Allen.

26.   2/1/06 Medical Records of Anthony Allen.

27.   3/12/09 Medical Records of Anthony Allen.

28.   2013 Authorization and Medical Records of Anthony Allen.

29.   8/27/10 Medical Records of Anthony Allen.

30.   10/1/2010 Medical Records of Anthony Allen.

31.   11/12/10 Medical Records of Anthony Allen.

32.   2/11/11 Medical Records of Anthony Allen.

33.   2/16/11 Medical Records of Anthony Allen.

34.   2/25/11 Medical Records of Anthony Allen.

35.   7/18/11 Medical Records of Anthony Allen.

36.   7/21/11 Medical Records of Anthony Allen.

37.   8/29/11 Medical Records of Anthony Allen.

38.   9/15/11 Medical Records of Anthony Allen.

39.   9/16/11 Medical Records of Anthony Allen.

40.   8/29/12 Medical Records of Anthony Allen.

41.   2/26/13 Medical Records of Anthony Allen.

42.   Letters from Kaiser to Anthony Allen dated 9/24/10, 1/14/11, 7/15/11, 4/5/11, 4/5/11, 12/16/11, 10/26/12, 1/23/13, 5/10/13.

///

///

///

Each party may use an exhibit designated by the other.

A.   No other exhibits will be permitted to be introduced unless:

(1)   The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Conference, or

(2)   The exhibit was discovered after the Pretrial Conference and the proffering party makes the showing required in paragraph "B," below.

B.   Upon the post-Pretrial discovery of exhibits, the attorneys shall promptly inform the court and opposing counsel of the existence of such exhibits so that the court may consider at trial their admissibility.   The exhibits will not be received unless the proffering party demonstrates:

(1)   The exhibits could not reasonably have been discovered prior to Pretrial;

(2)   The court and counsel were promptly informed of their existence;

(3)   Counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel.   If the exhibit(s) may not be copied, the proffering counsel must show that he has made the exhibit(s) reasonably available for inspection by opposing counsel.

As to each exhibit, each party is ordered to exchange copies of the exhibit not later than fourteen (14) days before trial. Each party is then granted five (5) days to file and serve objections to any of the exhibits.   In making the objection, the party is to set forth the grounds for the objection.   The parties

shall pre-mark their respective exhibits in accord with the Court's Pretrial Order.  Exhibit stickers may be obtained through the Clerk's Office.  An original and one (1) copy of the exhibits shall be presented to Harry Vine, Deputy Courtroom Clerk, at 8:30 a.m. on the date set for trial or at such earlier time as may be agreed upon.  Mr. Vine can be contacted at (916) 930-4091 or via e-mail at: hvine@caed.uscourts.gov.  As to each exhibit which is not objected to, it shall be marked and may be received into evidence on motion and will require no further foundation.  Each exhibit which is objected to will be marked for identification only.

XII. DISCOVERY DOCUMENTS

1.   Plaintiff

Plaintiff does not contemplate using any discovery documents to offer at trial other than for use in cross-examination and impeachment, other than depositions of Plaintiff's treating physicians.

2.   Raley's

A list of all portions of depositions Raley's expects to offer at trial is listed below.  Defendant RALEY'S ("Raley's") hereby submits this list of the video clips that it may present to the jury at the trial of this matter.  Raley's reserves the right to play additional video clips for impeachment and/or rebuttal. Raley's further reserves the right to present additional video clips listed by other parties.

**A.   Deposition of Plaintiff Anthony Allen, Volume I**

1.   Page 20, line 2 through Page 23, Line 17

2.   Page 48, line 3 through Page 49, Line 7

3.   Page 51, line 9 through Page 53, Line 8

1     4.    Page 54, line 23 through Page 55, Line 15

2     5.    Page 59, line 17 through Page 61, Line 3

3     6.    Page 61, line 21 through Page 63, Line 13

4     7.    Page 68, line 24 through Page 69, Line 8

5     8.    Page 71, line 24 through Page 73, Line 18

6     9.    Page 79, line 15 through Page 80, Line 10

7     10.   Page 85, line 19 through Page 88, Line 1

8     11.   Page 90, line 7 through Page 91, Line 16

9     12.   Page 92, line 9 through Page 94, Line 11

10    13.   Page 96, line 14 through Page 97, Line 25

11    14.   Page 109, line 12 through Page 109, Line 21

12    15.   Page 120, line 9 through Page 120, Line 24

13    16.   Page 130, line 5 through Page 132, Line 2

14    17.   Page 133, line 13 through Page 133, Line 15

15    18.   Page 135, line 21 through Page 136, Line 21

16    19.   Page 138, line 23 through Page 142, Line 17

17    20.   Page 142, line 18 through Page 145, Line 20

18    21.   Page 170, line 24 through Page 174, Line 14

19    22.   Page 175, line 16 through Page 177, Line 10

20    23.   Page 190, line 20 through Page 191, Line 14

21    B.    **Deposition of Plaintiff Anthony Allen, Volume II**

22    1.    Page 223, line 23 through Page 225, Line 13

23    2.    Page 248, line 10 through Page 250, Line 8

24    3.    Page 257, line 16 through Page 258, Line 23

25    4.    Page 261, line 4 through Page 262, Line 17

26    5.    Page 265, line 24 through Page 266, Line 4

27    6.    Page 275, line 11 through Page 276, Line 9

28    7.    Page 277, line 21 through Page 278, Line 12

1       **C.**    **State Court Case Deposition of Plaintiff Anthony Allen,**

2  **Volume I**

3               1.    Page 38, line 1 through Page 39, Line 22

4               2.    Page 137, line 12 through Page 139, Line 21

5               3.    Page 143, line 23 through Page 144, Line 8

6               4.    Page 168, line 3 through Page 168, Line 14

7               5.    Page 219, line 23 through Page 220, Line 4

8       **D.**    **State Court Case Deposition of Plaintiff Anthony Allen,**

9  **Volume II**

10              1.    Page 367, line 13 through Page 368, Line 25

11              2.    Page 389, line 10 through Page 389, Line 21

12              3.    Page 463, line 8 through Page 464, Line 1

13       **E.**    **State Court Case Trial Testimony of Plaintiff Anthony**

14  **Allen, Volume I**

15              1.    Page 54, line 25 through Page 56, Line 14

16              2.    Page 81, line 16 through Page 81, line 20

17              3.    Page 102, line 9 through Page 103, line 13

18       **F.**    **State Court Case Trial Testimony of Plaintiff Anthony**

19  **Allen, Volume II**

20              1.    Page 115, line 5 through Page 116, line 18

21              2.    Page 126, line 11 through Page 126, line 20

22              3.    Page 128, line 13 through Page 128, line 24

23              4.    Page 185, line 19 through Page 185, line 25

24       **G.**    **State Court Case Trial Testimony of Tao Her**

25              1.    Page 119, line 9 through Page 123, line 10

26              2.    Page 139, line 14 through Page 148, line 12

27              3.    Page 148, line 19 through Page 160, line 24

28  ///

1

### XIII. FURTHER DISCOVERY OR MOTIONS

2     Pursuant to the court's Status Conference Order, all discovery

3 and law and motion was to have been conducted so as to be completed

4 as of the date of the Pretrial Conference.  That order is

5 confirmed.  The parties are free to do anything they desire

6 pursuant to informal agreement.  However, any such agreement will

7 not be enforceable in this court.

8

### XIV. STIPULATIONS

9     The parties have not entered into any stipulations.

10

### XV. AMENDMENTS/DISMISSALS

11     Not applicable.

12

### XVI. FURTHER TRIAL PREPARATION

13     A.   Counsel are directed to Local Rule 285 regarding the

14 contents of trial briefs.  Such briefs should be E-filed ten (10)

15 days prior to trial, i.e., February 14, 2014.

16     B.   Counsel are further directed to confer and to attempt to

17 agree upon a joint set of jury instructions.  The joint set of

18 instructions shall be lodged via ECF with the court clerk ten (10)

19 calendar days prior to the date of the trial, i.e., February 14,

20 2014, and shall be identified as the "Jury Instructions Without

21 Objection."  As to instructions as to which there is dispute the

22 parties shall submit the instruction(s) via ECF as its package of

23 proposed jury instructions three days before trial, i.e., February

24 21, 2014.  This package of proposed instructions should not include

25 the "Jury Instructions Without Objection" and should be clearly

26 identified as "Disputed Jury Instructions" on the proposed

27 instructions.

28     The parties shall e-mail a set of all proposed jury

instructions in word or wpd format to the Court's Judicial

Assistant, Jane Klingelhoets, at: jklingelhoets@caed.uscourts.gov.

C.   It is the duty of counsel to ensure that any deposition which is to be used at trial has been lodged with the Clerk of the Court pursuant to Local Rule 133(j).  The depositions shall be lodged with the court clerk ten (10) calendar days prior to the date of the trial.  Counsel are cautioned that a failure to discharge this duty may result in the court precluding use of the deposition or imposition of such other sanctions as the court deems appropriate.

D.   The parties are ordered to E-file with the court and exchange between themselves not later than ten (10) days before the trial a statement designating portions of depositions intended to be offered or read into evidence (except for portions to be used only for impeachment or rebuttal).

E.   The parties are ordered to E-file with the court and exchange between themselves not later than ten (10) days before trial the portions of Answers to Interrogatories or Requests for Admission which the respective parties intend to offer or read into evidence at the trial (except portions to be used only for impeachment or rebuttal).

F.   Each party may submit proposed voir dire questions the party would like the court to put to prospective jurors during jury selection.  Proposed voir dire should be submitted via ECF ten (10) days prior to trial.

G.   Each party may submit a proposed verdict form that the party would like the Court to use in this case.  Proposed verdict forms should be submitted via ECF ten (10) days prior to trial.

H.   In limine motions shall be E-filed separately at least ten (10) days prior to trial, i.e., February 14, 2014.  Opposition briefs shall be E-filed five (5) days prior to trial, i.e., February 19, 2014.  No reply briefs may be filed.

## XVII.  SETTLEMENT NEGOTIATIONS

No further formal settlement negotiations will be set by the Court in this case.

## XVIII.  AGREED STATEMENTS

See paragraph III, *supra*.

## XIX.  SEPARATE TRIAL OF ISSUES

The parties agree there is no need for a separate trial of any issues in this case.

## XX.  IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

The appointment of an impartial expert witness is not necessary.

## XXI.  ATTORNEYS' FEES

The matter of the award of attorneys' fees to prevailing parties pursuant to statute will be handled by motion in accordance with Local Rule 293.

## XXII.  MISCELLANEOUS

Not applicable.

## XXIII.  ESTIMATE OF TRIAL TIME/TRIAL DATE

The parties estimate seven (7) to eight (8) court days for trial.  Trial will commence on February 24, 2014 at 9:00 a.m.

Counsel are to call Harry Vine, Courtroom Deputy, at (916) 930-4091, one week prior to trial to ascertain the status of the trial date.

///

XXIV.  <u>OBJECTIONS TO PRETRIAL ORDER</u>

Each party is granted ten (10) days from the date of this Pretrial Order to object to it via ECF.

IT IS SO ORDERED.

Dated:  January 10, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE